UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| DANIEL L. ALEXANDER, ) | |
| (Social Security No. XXX-XX-4979), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 3:11-cv-111-RLY-WGH |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

**I.   Statement of the Case**

Daniel L. Alexander seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), which found that he was not entitled to disability insurance benefits ("DIB") or supplemental security income ("SSI"). Alexander applied for these benefits in January 2009, alleging a disability onset of January 2005.  (R. 51).  Alexander's application was denied initially and upon reconsideration. (*Id.*)  An Administrative Law Judge (AALJ@) held a hearing in January 2010, where Plaintiff was present and testified and was accompanied by counsel.[1]  (*Id.*)

---

1.   This was Alexander's second hearing before an ALJ, as he had received a previous unfavorable decision on August 25, 2008.  The ALJ only considered matters between August 26, 2008 and March 25, 2010, the date of his decision.  (R. 51).

The ALJ found that Alexander had severe impairments but did not meet or equal any of the severe impairments listed in 20 C.F.R. Part 404 Subpart P Appendix 1 ("Appendix 1"). (R. 53-55). Moreover, he retained the residual functional capacity ("RFC") to perform a range of light work and could perform his past relevant work. (R. 56-62). The Appeals Council denied review (R. 1), making the ALJ's decision the final administrative decision and leading to this appeal.

## II. Relevant Facts

Defendant concedes that the hearing testimony and medical record are adequately summarized by Alexander. (Defendant=s Memorandum in Support of the Commissioner's Decision 2). That portion of Alexander's brief is incorporated into this opinion by reference and will not be repeated in this opinion except in the context of the issues. (Plaintiff's Brief 7-21).

## III. Legal Standards

An ALJ=s findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson*, 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or

substitute its judgment for that of the Commissioner. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ=s decision denying benefits. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. ' 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. ' 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**IV. Issues Presented**

Plaintiff alleges three errors by the ALJ that necessitate remand. The court

addresses them in turn.

**1. Did the ALJ reasonably conclude that Plaintiff did not meet or equal Listing 1.04A?**

Listing 1.04A (Disorders of the Spine) requires the Plaintiff to show that he has degenerative disc disease with all of the following findings:

(1) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain;

(2) Limitation of motion of the spine;

(3) Motor loss (Atrophy with Associated Muscle Weakness or Muscle Weakness) accompanied by sensory or reflex loss;

(4) If there is involvement of the lower back, a positive straight leg raising test.

Appendix 1, ' 1.04A. In this case, the parties dispute whether Alexander exhibits findings one and three.

As Alexander points out, the record reveals two instances of MRI evidence of nerve root impingement. (Plaintiff's Brief 25, citing R. 869-70, 906). He argues that pain is demonstrated by "the record as a whole which documents the Plaintiff=s complaints of pain." (*Id*. at 26). However, as Defendant emphasizes, the evidence of nerve root compression must be characterized by appropriate neuro-anatomic distribution of pain. (Defendant's Memorandum 3). Defendant is correct in this instance that under Listing 1.00(D), "physical findings must be determined on the basis of objective observations during the examination and not simply a report of the individual=s allegation, e.g., 'he says his leg is weak, numb.'" (*Id*., quoting Appendix 1 at § 1.00D). In this case, Alexander

has failed to identify objective evidence of pain distribution resulting from the specific nerve roots that are compressed and, therefore, the ALJ reasonably could have concluded that Listing 1.04A is not met.

Alexander also argues that the Commissioner erred in the step three finding by failing to consult a medical expert, which is required (under SSR 96-6(p)):

> When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant=s finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Alexander points out that the last time the file was reviewed for medical equivalence was July 16, 2009. (Plaintiff's Brief 27 (citing R. 866)). Since the previous time a physician examined the file, Alexander underwent two MRIs of his lumbar spine (each showing nerve root impingement) and one MRI of his cervical spine (showing a protruding disc having a mass effect on the spinal cord). (*Id*.). He was prescribed the use of a quad cane from another physician (*Id*. (citing R. 1055)) and underwent two major back surgeries in May 2010 and September 2010 (*Id.*, (citing R. 1064-67, 1088-93)). These surgeries included a fusion from T11 to the sacrum and removal of certain cobalt chrome rods and pedicle screws. (R. 1065, 1088). Alexander argues that it is reversible error that "[e]ven after that litany, neither the Appeals Council nor the ALJ found these new findings might 'change the findings of the State Agency physicians.'" (Plaintiff's Brief 27 (internal quotation omitted)). Alexander's argument is flawed in two respects.

First, the opinion of the ALJ, which was rendered on March 25, 2010, could not, of course, address these later medical problems. That evidence was not before the ALJ, the surgeries had not been completed, and therefore no error can be asserted in the opinion by failing to consider those later occurring surgeries. Moreover, it is not clear to the court whether this information was before the Appeals Council. The Request for Review of Hearing Decision (R. 108) is not dated and contains a reference to "See attorney letter." However, no such letter is included with the Record. Because the ALJ's decision was rendered on March 25, 2010, it can be presumed that the request for hearing and any attachments were made by May 25, 2010, since a timely request for review must have been filed within 60 days of the date of the decision. The order of the Appeals Council is dated July 8, 2011 (R. 2) and indicates that Alexander provided a "representative's brief" and "evidence from Tri-State Orthopaedics," but there is no indication of the dates encompassed by that evidence. The referenced brief and evidence itself does not appear to be a part of the record before the court.

Therefore, the court concludes from the Record that the evidence submitted to the Appeals Council would not have included the evidence of the two new surgeries, even though the decision of the Appeals Council was rendered well after the completion of those surgical proceedings. In the absence of a showing that the evidence cited to by Alexander was before the ALJ or the Appeals Council, there can be no error in the ALJ's reliance on the evidence in support of medical equivalence dated July 16, 2009, and found at page 866 in the Record.

**2.  Did the Commissioner err in determining a residual functional capacity by failing to properly weigh medical opinion evidence?**

In this case, the ALJ concluded that Alexander had the residual functional capacity to perform light work as defined in the appropriate regulations except that "he can lift and/or carry and push and/or pull 20 pounds occasionally and 10 pounds frequently; with normal breaks he can stand and/or walk for six hours per eight hour work day; sit for six hours per eight hour work day; and he retains the ability to complete simple and repetitive tasks."  (R. 62).

The ALJ summarized Alexander's RFC assessment by saying the decision was Asupported (by) the longitudinal medical record; the State consultative reviews and examinations; and the claimant=s statements, activities and presentation on examination; and the record as a whole.@  (R. 62).  The ALJ specifically stated that little weight was given to a social worker report and two third-party reports contained in the Record.  (R. 61).  The ALJ specifically gave credit to "the DDS physical residual functional capacity assessment which determined the Plaintiff had the ability to do light [work]" (R. 62, citing R. 858-65) and to the treating nurse practitioner=s statement that the Plaintiff could do some manual work (*Id.*, citing R. 412) and found that Plaintiff=s "exaggerations" (*See* R. 370, 914) rendered the functional capacity evaluation performed there as not consistent with the objective evidence and, therefore, subject to little weight.  (R. 61).

Alexander claims the ALJ erred by not discussing, or at most, barely mentioning, evidence from Dr. Montgomery Verona, a neurologist and Dr. John Grimm, an

7

orthopaedic surgeon. (Plaintiff's Brief 23). While the court finds troubling that the ALJ did not discuss more specifically the findings of Dr. Verona or Dr. Grimm, a review of the Record does not lead the court to believe that the ALJ completely failed to consider their opinions. The ALJ did discuss the July 15, 2009, evaluation by Dr. Grimm in the context of a January 2010 follow-up visit Alexander had with Dr. Grimm (R. 58 (citing R. 1051-52)). In July 2009, Dr. Grimm did establish a "plan of watching to see if the deformity worsens" and did ultimately suggest that a discectomy infusion would likely be necessary. (R. 57 (citing R. 903)). However, the existence of a potential back fusion does not clearly establish that a claimant could not perform their restricted range of light work, which the ALJ found to be appropriate in this case.

With respect to Dr. Verona=s reports, the ALJ discussed the computed tomography (CT) scan and the nerve conduction velocity/electromyogram (NCV/EMG) study he performed on Plaintiff. (R. 57-58). The ALJ noted that none of the symptoms described in Dr. Verona's report had a gradation greater than mild. (*Id.*) These findings from a medical expert are not inconsistent with a finding of restricted range of light work; in other words, they do not undercut the logical bridge from the available evidence to the ALJ's RFC finding. *See Steele v. Barnhart*, 290 F. 3d 926, 941 (7th Cir. 2002) (requiring the ALJ to build a logical bridge between the evidence and conclusions). While the court expresses concern that Drs. Verona and Grimm's findings were not discussed more extensively, to the extent they were discussed, they support the RFC finding.

8

3. **Does substantial evidence support the Commissioner's decision that Plaintiff is capable of performing past relevant work?**

The ALJ concluded that Alexander had the ability to perform the past relevant work as a cook or meat checker. (R. 62). With respect to Alexander's ability to perform the job of "cook" (DOT 313.374-010) light with a specific vocational preparation (SVP) of 3, Alexander points out that the appropriate Dictionary of Occupational Titles (DOT) listing specifies that the job carries an SVP of 5 with a medium exertional requirement. (Plaintiff's Brief 35, *see also* Appendix 1 of Plaintiff's Brief). Defendant does not dispute that the ALJ erred in his characterization of the cook position (Defendant's Memorandum 11),[2] and thus this court concludes the ALJ erred in this respect.

This leaves the only past relevant work found by the ALJ as "a meat checker" (DOT 710.384-322) light with an SVP of 2 as past relevant work. As Alexander points out, there is no such DOT listing for "meat checker" at DOT 710.384-322. However, Alexander did list the job of "checked meters for leaks" as past work (R. 207), and there is a DOT listing at 710.384.022 for "meter reader." A review of the hearing transcript of the discussion between the ALJ and the vocational expert does indicate that it is likely that the use of the words "meat checker" and the typographical error with respect to the DOT reference are

---

[2] "[A]ny possible error by the VE in misidentifying the cook position, DOT 313.374-010, is simply harmless." (Defendant's Memorandum 11).

inadvertent errors made by the ALJ (*see* R. 36-38), and that the ALJ did intend that Alexander could perform the "meter reader" position.[3]

To qualify as past relevant work, a claimant must have performed the work within the last 15 years that was substantial gainful activity, and the work must have lasted long enough for him to learn to do it. (R. 62, citing 20 C.F.R. § 404.1560(b)(1)). The "recency" requirement of 15 years refers to the time "prior to the time of adjudication at the initial, reconsideration, or higher appellate level." SSR 82-62. It may also refer to the 15 years prior to the date the claimant last met the disability insured status requirement in Title II matters, whichever is later. *Id.* "[W]ork performed 15 years or more prior to the time of adjudication of the claim (or 15 years or more prior to the date the Title II disability insured status requirement was last met, if earlier) is ordinarily not considered relevant." *Id.*

Alexander performed the meter reader position in 1994 (R. 207), which as he points out, was more than 15 years before the ALJ's decision rendered in March 2010. (Plaintiff's Reply Brief 9). As stated *supra*, Alexander had previously applied for DIB and SSI and received an unfavorable adjudication in August 2008, which would be within the 15 year time frame. (Plaintiff's Brief 4; R. 115-27). However, no matters from that previous adjudication were considered by the ALJ in this case (R. 51), and the ALJ does

---

[3] Alexander's prior work included work on an assembly line at a turkey processing plant (R. 207) which was described or called a "Hanger." This could cause some confusion about whether the work in turkey processing involved "meat checking." However, this court concludes the ALJ was not addressing "meat" processing as past relevant work.

not claim to have used the August 2008 adjudication as the measuring point for the 15 year time frame. (R. 62). Defendant does not argue that the 15 year time frame extends back from August 2008, rather than March 2010, and this court can find no case law suggesting that a prior independent adjudication should be treated as the initial adjudication under 20 C.F.R. § 404.1560(b)(1) or SSR 82-62. Alexander's work as a meter reader therefore cannot be classified as past relevant work, and thus neither of the positions identified (R. 62) in the ALJ's Step Four analysis qualifies as "relevant work."

Moreover, the ALJ did not engage in a Step Five analysis. There was no finding of fact as to whether there existed significant positions that someone with Alexander's RFC could perform in the national economy. Unlike the first four steps, the burden at Step Five lies with the Commissioner. 20 C.F.R. § 404.1520. Therefore, the court cannot conclude that the ALJ's errors in determining that Alexander was capable of performing past relevant work were harmless. If there is no past relevant work Alexander is capable of performing, as it appears from the ALJ's findings, the ALJ must conduct a Step Five analysis.

## V. Conclusion

The ALJ's conclusion that Alexander was capable of performing past relevant work is not supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is hereby **REMANDED** to determine if there is other past relevant work Alexander is capable of performing. If there is not, the Commissioner must determine whether there exist substantial positions in the national economy that Alexander

is capable of performing, given his RFC.   Judgment consistent with this entry shall now issue.


**SO ORDERED** the 28th day of September 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record